# EXHIBIT 3



# MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P. C.

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION
212-880-9470

COUNSEL
E. SCOTT MORVILLO
GREGORY MORVILLO
ROBERT C. MORVILLO

SENIOR ATTORNEY
THOMAS M. KEANE

MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

**11 MISC 00179**

May 19, 2011

**Via Email**

The Honorable Sidney H. Stein
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: In Re Application of Bank of Montreal, for Order Pursuant to 28 U.S.C. § 1782 for the Issuance of Subpoenas to American Express Company, Citibank, N.A., Signature Securities Group Corporation and Wachovia Bank, operating as Wells Fargo Bank, N.A. (the "Application")

Dear Judge Stein:

    I represent the Bank of Montreal ("BMO") in the above-referenced matter, which seeks leave to serve subpoenas on four financial institutions pursuant to 28 U.S.C. § 1782 in aid of an action BMO intends to bring in the Superior Court of Justice in Ontario, Canada. I respectfully write to request the Court's permission to file under seal (a) the Application, (b) the supporting Declaration of Stanley J. Julien dated May 13, 2011, and the exhibits thereto (the "Julien Declaration"), (c) my supporting declaration and the exhibits thereto, (d) the Memorandum of Law in Support of *Ex Parte* Application for Discovery Pursuant to 28 U.S.C. § 1782, (e) BMO's Corporation Disclosure Statement, and (f) any order entered by the Court. BMO is prepared to make all of the papers that it proposes to file under seal available for the Court's *in camera* inspection.

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

The Honorable Sidney H. Stein
May 19, 2011
Page 2

### Background

BMO believes that several borrowers and their confederates in the United States and Canada defrauded BMO out of more than $17 million through an elaborate "check kiting" scheme. BMO is presently preparing to bring an action against the participants in this alleged scheme in the Superior Court of Justice in Ontario, Canada. On May 13, 2011, BMO sought and obtained an *ex parte* order from the Ontario Superior Court of Justice (the "May 13 Order"), *inter alia*, (a) authorizing BMO to serve subpoenas on numerous financial institutions in the United States and Canada, including American Express Company, Citibank, N.A., Signature Securities Group Corporation and Wachovia Bank (the "SDNY Financial Institutions"), in connection with its investigation of the fraud and in furtherance of an action to be brought in the Superior Court of Justice; (b) directing the financial institutions to refrain from disclosing the existence of the subpoenas to, *inter alia*, the holders of the accounts being subpoenaed; and (c) requesting this Court's assistance in giving effect to its order.

The Superior Court of Justice granted the May 13 Order, placed BMO's application and the May 13 Order under a protective order, and included a provision in the May 13 Order prohibiting the subpoenaed parties from disclosing the existence of the application, the May 13 Order, or any act or conduct undertaken in compliance with that order, to any person or party, except for the limited purpose of complying with the order or obtaining legal advice with respect to compliance with the order. The court took these steps based on BMO's showing that, if the borrowers and their confederates become aware of BMO's investigation, they are likely to conceal or dissipate the stolen funds.

### Discussion

In considering whether to seal a document, courts should consider the "common law" right of access to the documents. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Under this test, a presumption of public access attaches to "judicial documents," that is, documents that are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d. at 119. Assuming the Application constitutes a "judicial document," a court should consider the "weight" that must be given to the presumption of public access against "competing considerations," such as "the privacy interests of those resisting disclosure." *Id*. This weight is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts," meaning that "[g]enerally the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id*. Information that determines the substantial rights of parties, and which therefore should be monitored by the public, is given the greatest presumption of access. *United States v. Amodeo*, 71 F.3d 1044, 1049-50 (2d Cir. 1995). For documents in the middle of the spectrum, the weight of the presumption "must be determined by the exercise

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

The Honorable Sidney H. Stein
May 19, 2011
Page 3

of judgment. . . [which] can be informed in part by tradition. Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.* at 1050.

This Application does not seek to determine any substantive rights. Rather, the Court is faced with an application to grant discovery and the adjudication of the parties' rights will proceed in Canada. *See In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002) (§ 1782 simply a discovery mechanism which does not subject a person to liability). Furthermore, as explained above, the Superior Court of Justice has already determined that the sealing of BMO's application for discovery is appropriate. Because this Application is not the sort of action that is normally in the public eye, the presumption of access is lessened. *See In re Kolomoisky*, M19-116, 2006 WL 2404332, *4 (S.D.N.Y. Aug. 18, 2006) (Robinson, J.) (sealing § 1782 application); *In re Letters Rogatory From Caracas, Venezuela, S.A. Concerning Cecilia Matos*, No. M15-377 (MBM), 1998 WL 16004, * 1 (S.D.N.Y. Jan. 13, 1998) (Mukasey, J.) (order appointing commissioner to take discovery under § 1782 filed under seal).

In contrast, the "competing considerations" weighing against the presumption of access are strong. Courts have sealed records where they could be used to "work a financial fraud." *Prescient Acquisition Group, Inc. v. MJ Pub. Trust*, 487 F. Supp. 2d 374, 376-77 (S.D.N.Y. 2007) (Castel, J.). There, one of the parties had submitted exhibits which revealed sensitive financial details about the banking records of entertainer Michael Jackson, which the court ordered to be sealed because it was worried they could be used to defraud him. *Id.*; *see also Amodeo*, 71 F.3d at 1051 (in determining countervailing factors to public access, court should consider sensitivity of information, including the "nature and degree of [any] injury" flowing from unsealing the records).

Similarly, courts have also sealed applications under section 1782 where "open inspection may be used as a vehicle for improper purposes." *In re Kolomoisky*, 2006 WL 2404332 at *4 (quoting *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)). In *Kolomisky*, an applicant seeking discovery under section 1782 asked that his papers be filed under seal because he believed the information contained therein would be used against him in a pending defamation lawsuit. *Id.* Finding that the applicant had "legitimate concerns" that the petition would be used improperly, the Court granted his application. *Id.* Here, BMO asks that this Application be sealed in order to prevent the putative defendants from using the Application to learn about BMO's investigation and further dissipate assets taken from BMO. In this age of electronic filing, Google searches, and instant access to information, there is a genuine risk that the public filing of the Application and supporting papers will result in disclosure of the investigation to those who might misuse the information.

Such considerations also operate to overcome any "qualified First Amendment right" of access to these documents. As set forth above, this is not a situation where the documents at

**MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.**

The Honorable Sidney H. Stein
May 19, 2011
Page 4

issue have historically been open to the press and public or where public access plays a positive role in the consideration of this Application. *See Lugosch*, 435 F.3d at 120. The fact that BMO has alleged a particular and specific injury that may come about as a result of allowing the documents to be filed unsealed thus overcomes any qualified First Amendment right. *See Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (upholding district court's sealing of documents upon specific finding party would otherwise be subjected to "financial harm").

Thus, the countervailing considerations overcome any presumption of access and this Court should order the entire Application placed under seal. *See In re Kolomoisky* 2006 WL 2404332 at * 4 (granting both petition for § 1782 application and petition to seal in one order); *cf. Doe v. Ashcroft*, 317 F.Supp.2d 488 (S.D.N.Y. 2004) (Marrero, J.) (ordering sealing to preserve non-disclosure provisions of statute).

* * *

For the reasons set forth above, BMO respectfully requests permission to file the Application and related papers under seal. I am, of course, available to address any questions your Honor may have regarding this request. Thank you for your consideration.

Respectfully submitted,

Jeremy H. Temkin

[Handwritten notation: 5/19/11 Permission to file an application for discovery pursuant to 28 U.S.C. § 1782 under seal granted. So ordered. S.H.S. U.S.D.J.]